IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JAYME CARPENTER, | ) |
| Plaintiff, | ) NO. 3:17-cv-01156 |
| v. | ) JUDGE RICHARDSON |
| CARS RECON, INC., | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

Pending before the Court is Defendant's Motion for Summary Judgment (Doc. No. 24). Plaintiff has filed a Brief in Opposition (Doc. No. 35),[1] and Defendant has filed a Reply (Doc. No. 31).

**BACKGROUND**

Plaintiff Carpenter is a former employee of Defendant Cars Recon, Inc. She alleges that, when she began working for Defendant, she and Defendant agreed that her husband and children would remain in Hoover, Alabama, that she would "work mobile," and that she would be available to be at Defendant's office in Franklin, Tennessee. Doc. No. 1 at ¶ 9. Plaintiff contends that on March 10, 2017, Ron Hope, President and CEO of Defendant, called her into a meeting, and told her (among other things) that, effective immediately, she would be required to be present in the Franklin office Monday – Friday, 8 a.m. until 5 p.m. *Id*. at ¶¶ 17-18. Plaintiff asserts that she pushed her chair back from the table and said, "it sounds like you are asking for my two week

---

[1] Plaintiff revised and refiled her original Response (Doc. No. 29) in accordance with the Court's Order (Doc. No. 33).

notice, so I guess you got it." Doc. No. 1 at ¶ 19. After that, Plaintiff told another employee to pack up her stuff and send it to Birmingham, and then she left. Doc. No. 25-2 at 38 and 62 (Dep. at 100 and 141).

In a breach-of contract claim styled as Count I, Plaintiff alleges that Defendant breached a Non-Competition, Confidentiality and At-Will Employment Agreement (the "Agreement") (Doc. No. 1-2) by failing to pay her severance. She also asserts, as Count II, a claim for violation of the implied duty of good faith and fair dealing. Doc. No. 1 at 4-5.

Defendant has moved for summary judgment on Plaintiff's claims, contending that a condition precedent to enforcement of the Agreement – that the company be sold to a new owner - was never met. In addition, Defendant argues that Plaintiff resigned and, therefore, was not entitled to severance under the Agreement. Finally, Defendant asserts that a claim for violation of the implied duty of good faith and fair dealing is dependent upon Plaintiff's breach of contract claim and therefore fails because that claim fails.

The Severance provision of the Agreement states:

4. <u>Severance.</u>

a. The right of Employee to a Severance Package (as defined below) shall be[sic] follows:

   i. In the event [sic] the Employee's resignation, death, or total disability or termination for Cause (as defined below), the Employer will have no obligation to pay Severance Package. "Cause" means Employer termination of the Employee's employment for:

      1. conviction of a felony or a crime involving moral turpitude;

      2. misappropriation of anything of value including but not limited to monies, assets or property; or

      3. any willful action or inaction of the Employee which, in the reasonable opinion of the Employer, constitutes dereliction (willful neglect or willful abandonment of assigned duties).

ii. If the triggering event was a Termination Without Cause (as defined below), in exchange for the Employee's execution of a full complete waiver and release of any and all claims against the Employer, its parent and affiliated entities, the Company shall provide to the Employee a "Severance Package" that includes as severance,

1. an amount equal to one hundred percent (100%) of the Employee's annual base salary at the rate in effect as of the Termination Without Cause, and

2. if Employee timely elects COBRA coverage, Employer will reimburse Employee the first twelve (12) months of COBRA premiums. Employee may continue his COBRA coverage by paying 100% of the COBRA premium under COBRA at his own cost.

iii. "Termination Without Cause" means a termination of employment by the Employer without Cause as defined herein.

Doc. No. 1-2 at 5.

## **SUMMARY JUDGMENT**

Summary judgment is appropriate where there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). In other words, even if genuine, a factual dispute that is irrelevant or unnecessary under applicable law is of no value in defeating a motion for summary judgment. *See id.* at 248. On the other hand, "summary judgment will not lie if the dispute about a material fact is 'genuine[.]'" *Id.*

A fact is "material" within the meaning of Rule 56(c) "if its proof or disproof might affect the outcome of the suit under the governing substantive law." *Anderson*, 477 U.S. at 248. A

genuine dispute of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Harris v. Klare*, 902 F.3d 630, 634-35 (6th Cir. 2018).

The party bringing the summary judgment motion has the initial burden of identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Pittman v. Experian Information Solutions, Inc.*, 901 F.3d 619, 627-28 (6th Cir. 2018). If the summary judgment movant meets that burden, then in response the non-moving party must set forth specific facts showing that there is a genuine issue for trial. *Id*. at 628.

A party asserting that a fact cannot be or genuinely is disputed—i.e., a party seeking summary judgment and a party opposing summary judgment, respectively—must support the assertion by citing to materials in the record, including, but not limited to, depositions, documents, affidavits or declarations. Fed. R. Civ. P. 56(c)(1)(A). On a motion for summary judgment, a party may object that the supporting materials\ specified by its opponent "cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Upon such an objection, the proponent of the supporting material must show that the material is admissible as presented or explain how it could be presented in a form that would be admissible. *Thomas v. Haslam*, 303 F. Supp. 3d 585, 624 (M.D. Tenn. 2018); *Mangum v. Repp*, 2017 WL 57792 at \*\* 5 (6th Cir. Jan. 5, 2017) (citing Fed. R. Civ. P. 56(c) advisory committee's note to 2010 amendment).

The court should view the facts and draw all reasonable inferences in favor of the non-moving party. *Pittman*, 901 F.3d at 628. Credibility judgments and weighing of evidence are improper. *Hostettler v. College of Wooster*, 895 F.3d 844, 852 (6th Cir. 2018). As noted above, where there is a genuine dispute as to any material fact, summary judgment is not appropriate. *Id*. The court determines whether sufficient evidence has been presented to make the issue of fact a proper jury question. *Id*. The mere existence of a scintilla of evidence in support of the nonmoving

party's position will be insufficient to survive summary judgment; rather, there must be evidence upon which the jury could reasonably find for the nonmoving party. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

## **BREACH OF CONTRACT**

In Tennessee, a viable claim for breach of contract has three essential elements: (1) the existence of an enforceable contract; (2) non-performance amounting to a breach of that contract; and (3) damages caused by the breach of contract. *F.S. Sperry Co, Inc. v. Schopmann*, 304 F. Supp. 3d 694, 701 (E.D. Tenn. 2018); *Daniels v. Erie Ins. Group*, 291 F. Supp. 3d 835, 841 (M.D. Tenn. 2017). In interpreting a contract, the role of the Court is to ascertain and give effect to the intent of the parties. *Pineda Transp., LLC v. FleetOne Factoring, LLC*, No. 3:18-cv-0089, 2018 WL 2137760 at * 3 (M.D. Tenn. May 9, 2018). The task is to ascertain the intention of the parties based upon the usual, natural, and ordinary meaning of the contract language. *Id*.

ENFORCEABLE CONTRACT

Defendant first argues that Plaintiff cannot establish an enforceable contract because the Agreement was subject to a condition precedent that was never met. Defendant contends that it provided Plaintiff with the Agreement in connection with pending negotiations to sell CARS to a new owner, and the sale of the company was a condition precedent of the Agreement. It is undisputed that the sale of the company never occurred.

A condition precedent is "an event, not certain to occur, which must occur, unless its non-occurrence is excused, before performance under a contract becomes due." *Hearn v. American Wash Co., Inc.*, No. M2017-00722-COA-R3-CV, 2018 WL 3479912 at * 3 (Tenn. Ct. App. July 19, 2018); *Upperline Equipment Co. v. J & M, Inc.*, 724 F. Supp. 2d 883, 888 (E.D. Tenn. 2009). Non-performance of a condition precedent is an affirmative defense that must be pled. *Hearn*,

2018 WL 3479912 at * 3; Tenn. R. Civ. P. 9.03 (denial of performance or occurrence of condition precedent shall be made specifically and with particularity).

There is no language in the Agreement creating a condition precedent or conditioning the contract's enforcement upon any condition.[2] A potential sale of the company is not mentioned in the Agreement. Specifically, with regard to severance, there is no limitation of that provision to a situation where the company is sold. In addition, the Agreement states that, unless specifically provided therein, "this Agreement contains all the understandings and representations between the Employee or [sic] the Employer pertaining to the subject matter hereof and supersedes all prior and contemporaneous understandings, agreements, representations, and warranties, both written and oral, with respect to such subject matter." Doc. No. 1-2 at 6-7.

Plaintiff testified that she was not told that signing the Agreement was in connection with the potential sale of the company until "after the fact." Doc. No. 25-2 at 28 (Dep. at 82). The President and CEO of Defendant, Ron Hope, testified that the Agreement was something he put together in relation to a potential sale of the company. Doc. No. 25-3 at 91 (Dep. at 121). He stated that the intent was to provide severance to employees in the event of a change of ownership if an employee was terminated after the change of ownership. *Id*. That intent is not expressed in the Agreement. Hope testified that he expressed that intent to Plaintiff. *Id*. at 91-92 (Dep. at 121-22). Plaintiff disputes that the Agreement was intended as a protection in the event a new owner terminated her employment. Doc. No. 34 at ¶ 16.

---

[2] Although Defendant pleads, in its Answer, that no enforceable contract for severance exists between Plaintiff and Defendant (Doc. No. 13 at 5), it does not plead condition precedent. In its theory in the Proposed Case Management Order, Defendant does not mention a condition precedent to this Agreement. Doc. No. 15 at 2.

There is nothing in the Agreement about a condition precedent or a sale; the Agreement contains no language to that effect. Moreover, Defendant did not plead non-occurrence of a condition precedent as an affirmative defense or deny that occurrence specifically and with particularity. Doc. No. 13 at 5. *See Hearn*, 2018 WL 3479912 at * 3; Tenn. R. Civ. P. 9.03.

For all these reasons, the Court cannot find that Defendant is entitled to judgment as a matter of law on the grounds that there was no enforceable contract.

BREACH

Defendant also argues that, even if there is an enforceable contract, it did not breach that contract. Defendant asserts that Plaintiff was not entitled to severance under the Agreement because she resigned and was not terminated by Defendant without cause.

As noted above, under the severance provision, if an employee is terminated without cause, Defendant "shall provide" a severance package. "Termination Without Cause" is specifically defined in the contract as termination *not* based on (1) conviction, (2) misappropriation, or (3) dereliction of duties. Doc. No. 1-2 at 5. There is no allegation that Plaintiff fit any of these three categories.

The parties frame the issue as whether Plaintiff resigned (for which no severance is provided) or was "constructively discharged" (which arguably could be construed as termination without cause). Constructive discharge typically arises in employment discrimination and/or retaliation cases, however, which this case is not. Plaintiff has not asserted an underlying discrimination or retaliation claim or otherwise claimed to be a part of a protected class. The constructive discharge cases cited by the Plaintiff are employment discrimination/retaliation

cases,³ but this is a breach of contract case. Plaintiff has cited no cases in which constructive discharge was applicable in a breach of contract case.

The issue herein is not whether Plaintiff was constructively discharged, but whether Defendant breached the contract between these parties.⁴ To make that determination, based upon the specific language of the contract cited above, the Court must decide whether Plaintiff was "terminated without cause."⁵

There are issues of fact as to what happened on the day Plaintiff allegedly resigned. For example, the parties dispute exactly what Hope told Plaintiff⁶ on March 10, 2017 about Plaintiff's need to be in the Franklin office more. Doc. No. 34 at ¶ 27-28. The parties also disagree about whether Hope's alleged "demand" for her to be in the office every day materially altered the terms of her oral understanding with Hope concerning her presence in the Franklin office; they likewise

---

³ For example, *Cross v. Sbarro Am., Inc.* involved age discrimination claims under the ADEA and the THRA; *Smith v. LHC Group, Inc.* involved a retaliation claim; *Blair v. Rutherford Cty. Bd. of Educ.* involved an ADEA claim; and *Shaw v. Donahoe* involved religious discrimination and retaliation claims.

⁴ Even if the Court were to analyze Plaintiff's claim in terms of constructive discharge, however, Plaintiff has failed to show that Defendant permitted conditions of discrimination so intolerable that a reasonable person would resign her employment. *Campbell v. Florida Steel Corp.*, 919 S.W.3d 26, 34 (Tenn. 1996) (constructive discharge committed when employee involuntarily resigns to escape intolerable and illegal employment conditions to which employee is subjected because of race, color, religion, sex, or national origin), cited in *Hardy v. Tenn. State Univ.*, No. M2014-02450-COA-R3-CV, 2016 WL 1242659 at * 33 (Tenn. Ct. App. March 24, 2016).

⁵ Plaintiff has cited no authority for the proposition that this question would have to be answered in the affirmative if the Court were to agree that Plaintiff was "constructively discharged." Indeed, as indicated above, Plaintiff has not supported her implication that the legal concept of 'constructive discharge" is applicable at all in the instant breach-of-contract case.

⁶ Hope claims he said, "You may need to be in the office more," and Plaintiff claims Hope said, "Effective immediately, I need you in the office Monday through Friday, 8:00 a.m.-5:00 p.m."

disagree about the substance of such oral understanding. *Id*. at ¶ 32; Doc. No. 38 at ¶ 7.[7] The parties also disagree as to whether Hope suggested that Plaintiff move her office or whether he *demanded* that Plaintiff move her office and whether there was any valid reason for that move. *Id.* at ¶ 4; Doc. No. 34 at ¶ 25.

To prevent summary judgment, however, these disputed facts must be more than just disputed. They must also be *material*. *Anderson*, 477 U.S. at 248. Even if the Court (mindful that it must construe the evidence in favor of Plaintiff, the non-movant) accepts Plaintiff's version of these disputed facts, both the alleged oral understanding and the offer of employment stated that Plaintiff would be in the Franklin office "as needed." Plaintiff has cited nothing to counter Defendant's showing that, at the time in question, she truly was "needed" in Franklin because of a crucial project.[8]

---

[7] Plaintiff testified that Hope agreed she would be in the office and available as needed but that she could also work remotely as necessary. Doc. No. 25-2 at 11 (Dep. at 47). The offer of employment sent to Plaintiff states that Plaintiff would be available to "work mobile" and available to be at the office located in Franklin, TN. *Id*. at 64. Hope claims they reached a mutual understanding that Plaintiff would not need to move to Tennessee immediately so long as she would be available to be in the Franklin office to work when she was needed to do so. Doc. No. 25-1 at ¶¶ 5-6. These understandings all include the agreement that Plaintiff would be available to be in Franklin when needed.

[8] In her deposition, Plaintiff testified that, when she started working with Defendant, CARS was looking for a new payroll company. Doc. No. 25-2 at 20 (Dep. at 61). She agreed it was a "pretty big" and costly project for the company. *Id*. at 22 (Dep. at 63). Plaintiff testified that there were some issues with the project and the timelines kept getting pushed back. *Id*. at 52 (Dep. at 116). At the March 10, 2017 meeting, Hope told Plaintiff that he wanted one person in charge of the payroll project, and he wanted that person to be Plaintiff. Doc. No. 25-2 at 36-37, 53-54 (Dep. at 98-99, 117-118). Because of this expressed, pressing need for Plaintiff's participation in that crucial project, it is reasonable to believe that Defendant would have a specific disincentive to fire Plaintiff. Plaintiff agreed that, at that point (on March 10), it sounded like Hope thought she was going to remain employed with the company and be in charge of the payroll project. Doc. No. 25-2 at 54 (Dep. at 118).

Plaintiff does not dispute that she pushed her chair back from the table and told Hope it sounded like he was asking for her two-week notice and so she guessed he'd get it. Doc. No. 1 at ¶ 19; Doc. No. 25-2 at 33 (Dep. at 89). She does not dispute that, after saying this, she left. Doc. No. 25-2 at 38 (Dep. at 100). She agrees that, before she left, she told another employee to pack up her stuff and ship it to Birmingham. Doc. No. 25-2 at 62 (Dep. at 141). She does not allege that anyone in Defendant's employ told her she was terminated. She testified that she believed Hope wanted her to quit, in light of the fact that he did not try to stop her. *Id*. at 40 (Dep. at 102).

The Court finds that Plaintiff has not provided evidence that Defendant intended to fire her or expressed an intent to fire her. Rather, the evidence is clear that she resigned—a resignation that Plaintiff now would like to, but as discussed above cannot, turn into a termination via the notion of constructive discharge. Plaintiff has not carried her burden to raise a genuine issue as to whether she was terminated, with or without cause. Therefore, as a matter of law she is not entitled to severance under the Agreement and thus she has not shown that Defendant breached the contract by failing to pay her severance. Thus, the breach of contract claim must fail, and Defendant is entitled to summary judgment on her claim of breach of contract.

## **IMPLIED DUTY OF GOOD FAITH AND FAIR DEALING**

It is well-established that in Tennessee, the common law imposes a duty of good faith in the performance of contracts. *Coleman v. Wells Fargo Banks*, 218 F. Supp. 3d 597, 606 (M.D. Tenn. 2016); *Cadence Bank v. The Alpha Trust*, 473 S. W. 3d 756, 769 (Tenn. Ct. App. 2015). The duty of good faith, however, does not extend beyond the terms of the contract and the reasonable expectations of the parties under the contract. *Id*. While this duty is implied in every contract, a breach of such a duty requires the violation of a specific contractual provision. *Shelbyville Hosp. Corp. v. Mosley*, 69 F. Supp. 3d 718, 724 (E.D. Tenn. 2014). "As to [a plaintiff's] cause of action

designated 'breach of covenant of good faith and fair dealings,' this is not a cause of action in and of itself but is a part of a breach of contract cause of action." *Lyons v. Farmers Ins. Exch.*, 26 S.W.3d 888, 894 (Tenn. Ct. App. 2000). Thus, Plaintiff's cause of action (Count II) based on breach of the "Implied Duty of Good Faith and Fair Dealing" does not exist independently of, and instead stands or falls based upon the validity of, Count I's cause action for breach of contract.

The Court finds that, because Plaintiff cannot establish a breach of contract claim, she likewise cannot establish the dependent claim of violation of the implied duty of good faith and fair dealing.

## **CONCLUSION**

For all of these reasons, Defendant's Motion for Summary Judgment (Doc. No. 24) will be GRANTED.

*Eli Richardson*
_____
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE